THOMAS, Justice.
This case comes to us on appeal taken before the effective date of the amendment of Article V of the Constitution, 1 July 1957, and was retained for determination by authority of Sec. 26(6) of the amended article, F.S.A.
The appellee is the operator of a pest control business by virtue of a license granted by the State Board of Health and, further, by authority of a certificate issued by the Structural Pest Control Board.
The Pest Control Board, members of which are appellants here, ordered the ap-pellee to show cause why his license and certificate should not be revoked or suspended because of breach of certain regulations of the State Board of Health. He was charged with four violations of Rule 516.1 by fumigating as many separate structures without having on duty during each operation an alert watchman or guard, with violation of Sec. 504 of the rules of that board by fumigating a building without having available “medicinal supplies, first-aid kit, or similar safety devices or equipment,” and with violation of Secs. 514.1 and 514.2 of the rules of that board by fumigating a building without warning signs containing the words “ ‘Danger’ ” and “ ‘Deadly Poison’ ”.
Afterward the appellee filed a bill seeking a decree construing Chapter 24364, Laws of Florida, Acts of 1947, as amended by Chapter 29783, Laws of Florida, Acts of 1955, now designated Chapter 482, Florida Statutes 1955, F.S.A., known as “structural pest control act of 1947” and also construing Regulation 103.3 of the State Board of Health adopted 22 August 1954. He also asked the court to declare illegal all charges preferred against him by the appellants, because of lack of jurisdiction to entertain them unless lodged by the State Board of Health, and to enjoin prosecution not only of the pending charges but the institution by appellants of complaints against him in the future.
*109 All of the controlling statutes to which we refer are sections of Chapter 482, Florida Statutes 1955, and F.S.A.
The sole question in this controversy is whether charges of violation of regulations governing the pest control business must be originated by the State Board of Health or may be inaugurated by the Structural Pest Control Board. No testimony was taken in the case as the point to be decided is purely one of law.
It is the position of the appellants that charges may be instituted, tried and determined by them while the appellee insists that the Board of Health alone can prefer charges which, once made, are, so appellee concedes in his brief, properly triable by the Structural Pest Control Board. This system, argues the appellee, not only harmonizes with the provisions of the act but also preserves the principle that a board should not at once be prosecutor, judge and executioner.
This theory, as we understand the argument is based also on the comparison of Regulation 103.3, supra, and the relevant provisions of Section 482.13. Under the rule, when a written complaint about work performed is made to the Board of Health, whether directed against a “certified or un-certified” operator in the organization performing the work, the certified operator in charge is held responsible. If after investigation it appears that the complaint is well founded, the State Board of Health is required to notify the certified operator who is thereupon given 30 days to remedy the defective condition.
Appellee concedes that the inspectors appointed by the Board of Health under Section 482.05 must also report to the Structural Pest Control Board but reports, he maintains, would not constitute charges and he flatly states that “no charge can be predicated thereon until after the Health Board has complied with its own Regulation of notice and an opportunity to correct.”
It is quite true that the structural pest control act contains many provisions relating to the part of the Board of Health in its enforcement. For instance, in Section 482.03, it is provided that all regulation of pest control and commercial fumigation shall be vested in the Board of Health which shall immediately supervise them.
It is equally true that the Board of Health is empowered to make rules so that the “conduct” of such businesses will accord with the restrictions of the statute, Section 482.04. In the performance of this function the Board of Health is enjoined to “use the structural pest control board in an advisory capacity.” But we have difficulty in dignifying the rule to which we have referred to the extent that proceedings may not be instituted by the Pest Control Board in accordance with the specific terms of the act until, as a kind of condition precedent, notice to the offender has been given and he has failed to remedy or satisfactorily to explain.
In Section 482.13, supra, the language is very plain. When any licensee, of the State Board of Health, or holder of a certificate from the Pest Control Board, has violated any provision of the chapter or any .rule or regulation of either board, his license or certificate “may be declared revoked or suspended by a majority vote of the Florida structural pest control board after reasonable notice and hearing.” We pause here to say that the law is now not only dealing with regulation but with the power to discipline for violation of the statute or rule, and this power is expressly vested in the Pest Control Board. There follow in the section the specifications of the notice and of the manner in which the hearing must be conducted.
The section is comprehensive and plainly secures to the Pest Control Board the power to proceed in an orderly way, after due notice, toward the determination of the question whether or not the license or the certificate of an operator should be lifted. *110 We decline to hold that when power is so definitely given, its exercise can be impeded by a rule of the State Board of Health placing upon itself the restriction that in event of a “complaint against work performed,” the certified pest control operator be given the opportunity to remedy the situation or satisfactorily explain why it “should not be corrected.” This rule was obviously designed to deal only with defective workmanship or materials used in a job and not with other misdeeds of a licensee or certificate holder which might form bases for revocation or suspension.
In the same section there are listed some of the misdeeds that would be grounds for revocation or suspension. The procedure urged by the appellee would be utterly impracticable as applied to many of these, for illustration, conviction of a felony, habitual drunkenness or perpetration of fraud. What would be accomplished by notifying a drunkard, a defrauder or a convict to “correct [the] condition, or explain satisfactorily why such condition should not be corrected” ? For that matter, application of the rule would have been impracticable in this very case for how could appellee have corrected the situation that was created when he failed to provide a guard, proper warning signs or medicinal supplies during work already done?
We fail to understand how due process would not be afforded by the notice and hearing required in the act on the part of the Structural Pest Control Board unless as a prerequisite the rule was followed. And we cannot accept the argument that that board, though it may entertain, try and determine a charge, lacks jurisdiction to perform its duties until the proceedings are started by the State Board of Health presumably because such authority is placed in the latter by the adoption of its own rule.
The rule itself contains no reference to the filing by it of charges but merely provides that whenever “a written complaint * * * shall be received!’ the certified operator in charge of the work said to have been improperly performed shall be held responsible. It continues, “[u]pon receipt, and after investigation of the complaint and provided the complaint is justifiable,” the notice already described is given. (Italics supplied.)
So even were we to assume that the State Board of Health under its rule-making power could arrogate to itself exclusive jurisdiction to start proceedings to determine whether or not a person had been guilty of conduct justifying suspension or revocation of his certificate or license, it is clear to us that the board did not undertake to do so by the only rule cited in the record or briefs.
We do not find in the act language that would warrant our holding that the State Board of Health was intended to serve as prosecutor and that the Structural Pest Control Board was meant to be powerless to act until it had received from the former some sort of formal statement of misconduct which if substantiated by proof would require revocation or suspension of a certificate issued by one or license issued by the other. Nor do we see occasion to hold that unless such procedure is followed, despite the statutory requirement of notice apprising the suspect of the “charge placed against him,” the “time of [sic] place of such hearing” and the privilege of having “counsel,” the guaranty of due process would be violated.
We, therefore, albeit reluctantly, disagree with the learned chancellor and reverse the decree with directions to take such other proceedings as may appear to the chancellor consistent in view of the opinion we have expressed.
Reversed.
TERRELL, C. J., and HOBSON, ROBERTS and DREW, JJ., concur.